

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| BETTY PISONI, | ) | No. ED101976 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 12SL-CC00212 |
| | ) | |
| STEAK 'N SHAKE OPERATIONS, INC., | ) | Honorable Robert S. Cohen |
| | ) | |
| Respondent. | ) | Filed:  September 1, 2015 |

Betty Pisoni ("Appellant") appeals the trial court's denial of her motion for a new trial following a jury verdict in favor of Steak 'N Shake Operations, Inc. ("Respondent") on Appellant's claim for personal injury, based on Respondent's alleged spoliation of evidence and the inclusion of certain expert medical testimony.  We affirm.

## I.      BACKGROUND

On May 7, 2009, Appellant went to a Steak 'n Shake restaurant location ("the restaurant").  While in the restaurant, Appellant slipped and fell on a wet floor that had been recently mopped by Respondent's employee.  Appellant completed a Steak 'n Shake incident report immediately following the fall.  Appellant was taken from the restaurant to the emergency room by ambulance and the treating physician opined the fall contributed to a tear in Appellant's meniscus.

Appellant called Respondent on May 14, 2009 to ask why no one had contacted her regarding her incident report.

On January 19, 2012, Appellant filed a petition against Respondent, alleging negligence and premises liability. During discovery, Appellant submitted an interrogatory to Respondent regarding the existence of a surveillance system in the restaurant and further requested a copy of the system's video footage of Appellant's fall. In its initial answer dated March 22, 2012, Respondent answered that the footage in question was no longer available because Respondent did not receive notice of Appellant's claim within twelve days of the occurrence. Subsequently, on May 20, 2014, Respondent supplemented its interrogatory answers to state that no video of the accident was available because the footage was automatically recorded over a short time after the incident and a DVD copy was not made.

Respondent acknowledged that it maintained an automated video surveillance system in the restaurant, but the system was set up to automatically record over old footage after a set number of days.[1] Respondent's normal practice was to not maintain copies of old footage. Respondent's manager at the restaurant viewed the surveillance tape the day following the fall and, while Respondent could have made a DVD copy, it did not, resulting in the loss of the footage.

Also in the discovery phase of the case, Appellant submitted to an independent medical examination pursuant to Rule 60.01(a)(1)[2] by Respondent's retained medical expert, Dr. Richard Rende. Following his review of the available records and his examination, Dr. Rende prepared a Rule 60.01 report[3] concluding Appellant's complaints of knee pain were caused by a

---

[1] The parties do not identify how long footage remained within the surveillance system before being taped over.
[2] All further references to Rules are to Missouri Supreme Court Rules (2014).
[3] As discussed below in Section II.B., Rule 60.01(b) discusses the procedure by which a physician reports his findings and their bases.

longstanding degenerative process and that her complaints were not related to the slip and fall of May 7, 2009. Further, Dr. Rende noted his interest in supplementing his report by reviewing films from Appellant's treating physician concerning Appellant's knee as it would be "very easy by reviewing the intraoperative pictures to make a determination as to whether [the] meniscus tear was as a result of the injury she described on May 7, 2009, or whether it preexisted this in the form of a degenerative meniscus tear." Four days before Appellant's jury trial, Dr. Rende obtained the films from Appellant's treating physician and testified by video deposition that the films confirmed his earlier diagnosis.

At the start of and during the trial, Appellant made a number of requests of the trial court. First, she filed a timely motion in limine objecting to Dr. Rende's proposed testimony regarding the films as they had not been included in the initial Rule 60.01 report. The trial court denied Appellant's motion. Respondent presented the videotape deposition of Dr. Rende at trial, including his opinion that the films he received from Appellant's treating physician four days before trial were consistent with his prior opinions outlined in the initial Rule 60.01 report.

Secondly, because of Respondent's failure to preserve the videotape evidence, Appellant filed "Plaintiff's motion for relief based on the spoliation doctrine" requesting, (a) a jury instruction that Respondent be held to admit the floor where Appellant fell was wet, causing her fall, that the floor was wet from Respondent's employee mopping it, and that there were no wet floor signs present; and (b) to prohibit Respondent from offering testimony about the disputed facts the video would have shown. Following argument by Appellant and Respondent, the trial court refused to submit any adverse inference instruction to the jury. It also ruled that Respondent would not be able to present witness testimony regarding what they saw on the video, and that Respondent would be limited to present employees' testimony regarding what

they witnessed in person at the time of Appellant's fall. As a result, one of Respondent's employees, Latrice Moore, testified at trial that wet floor signs were present at the time of the fall. Finally, the trial court also granted Appellant permission to argue the adverse inference from the missing videotape in closing argument, which Appellant did.

The jury returned a verdict in favor of Respondent, and the trial court entered a judgment consistent with the jury's verdict. Subsequently, Appellant filed a motion for new trial alleging the trial court erred in refusing to submit the adverse-inference instructions, permitting Respondent to testify about facts the video would have shown, and allowing Dr. Rende to offer opinion testimony that was not included in his Rule 60.01 report. The trial court denied Appellant's motion for new trial. This appeal followed.

## II.    DISCUSSION

Appellant brings two points on appeal. In her first point, Appellant asserts the trial court erred in denying her motion for a new trial because it misapplied the spoliation doctrine regarding the destroyed video evidence of her fall. In her second point, Appellant contends the trial court erred in denying her motion for a new trial because it allowed Dr. Rende to offer opinion testimony not included in his initial Rule 60.01 report.

### A.    Spoliation

In her first point on appeal, Appellant asserts the trial court erred in denying her motion for a new trial because it misapplied the spoliation doctrine regarding the destroyed video evidence of her fall. Specifically, Appellant argues Respondent's spoliation entitled her to a non-MAI adverse-inference instruction or to prevent Respondent from presenting other testimony about the fall. We disagree.

4

We review a trial court's denial of a motion for new trial as well as the refusal to submit a non-MAI instruction for an abuse of discretion. *McCullough v. Commerce Bank*, 349 S.W.3d 389, 396-97 (Mo. App. W.D. 2011); *Burrows v. Union Pacific R. Co.*, 218 S.W.3d 527, 533 (Mo. App. E.D. 2007). A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *McCollough*, 349 S.W.3d at 396-97. The instructional error must be prejudicial, materially affecting the merits of the action, to warrant reversal. *Id*. at 397.

Spoliation is the intentional act of destruction or significant alteration of evidence. *State ex rel. Zobel v. Burrell*, 167 S.W.3d 688, 691 (Mo. banc 2005). The concealment or suppression of relevant evidence, or the failure to determine whether certain evidence exists may also constitute spoliation. *DeGraffenreid v. H.L. Hannah Trucking Co.*, 80 S.W.3d 866, 874, 878 (Mo. App. W.D. 2002) (overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223, 225 (Mo. banc 2003)). The destructive act must be intentional; mere negligent destruction of evidence does not constitute spoliation. *Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522, 527 (Mo. App. E.D. 1998). The spoliator must destroy or alter the evidence under circumstances indicating fraud, deceit, or bad faith. *Id*. Under certain circumstances the spoliator's failure to adequately explain the evidence's destruction may give rise to an adverse inference. *Id*. at 527. The party seeking to invoke the doctrine bears the burden of making a prima facie showing of the spoliator's fraudulent intent. *DeGraffenreid*, 80 S.W.3d at 873.

If the trial court finds spoliation of evidence occurred and grants a party relief, the "spoliation doctrine" provides the trial court may grant an adverse evidentiary inference in favor of the opposing party as a remedy. *Baldridge v. Director Of Revenue*, 82 S.W.3d 212, 223 (Mo.

5

App. W.D. 2002).  The adverse inference holds the spoliator to admit the missing evidence would have been unfavorable to its position.  *Garrett v. Terminal R. Ass'n of St. Louis*, 259 S.W.2d 807, 812 (Mo. 1953); *Schneider*, 976 S.W.2d at 526.  "The adverse inference, however, does not prove the opposing party's case.  Instead, the spoliator is left to determine whether any remaining evidence exists to support his or her claim in the face of the inference." *Id.* at 526.

The Western District addressed the extent of the remedy for spoliation in *DeGraffenreid*. In that case, a truck driver suffered a stroke in his parked truck.  *DeGraffenreid*, 80 S.W.3d at 870.  The driver filed a claim for workers' compensation, alleging the trucking company forced its drivers to drive more hours than federal regulations allowed, causing stress that contributed to the stroke.  *Id.*  In discovery, the driver sought a set of telephone logs maintained by the trucking company allegedly demonstrating the federal violation, but the trucking company failed to provide the complete logs without explanation.  *Id.* at 873-74.  The Workers' Compensation Commission ("the Commission") found the trucking company's failure to explain the missing logs triggered the spoliation doctrine, and as a result the trucking company was required to admit that driving in excess of federal regulations was a substantial factor in his stroke, entitling him to benefits.  *Id.* at 871.  On appeal, the Court agreed the spoliation doctrine was triggered, but held the Commission erred in the appropriate remedy.  *Id.* at 875, 878.  The Court reasoned that the spoliator is deemed to admit only that the document in question would state what the opposing party claims it states, not the ultimate conclusion of the claim.  *Id.* at 877-78.  Thus, it would be presumed that the driver drove in excess of the hours allowed by federal regulations, but the trucking company did not admit that the violation was a substantial factor in the stroke or automatically entitle the driver to benefits.  *Id.* at 878.

6

A finding of spoliation provides an evidentiary remedy to punish the spoliator. *Schneider*, 976 S.W.2d at 526. The spoliator must admit what the evidence *would have shown* had it been available, but that admission is limited specifically to that evidentiary question. The party asserting the doctrine is not entitled to any further inferences as a matter of law regarding that evidence. As such, the truck driver in *DeGraffenreid* was entitled to an admission that the trucking company required him to violate federal regulations, but he was not entitled to an admission that the violation was a substantial factor contributing to his stroke. 80 S.W.3d at 878.

In this case, Respondent's automated surveillance system captured video footage of Appellant's May 7, 2009 fall, which was reviewed by a manager at the restaurant. Respondent did not make a copy of the footage, despite the fact that Respondent had the ability to do so and was aware of Appellant's fall with the filing of an incident report on the day of the accident and her follow-up call on May 14, 2009. As a result of the destruction of this evidence, Appellant claimed Respondent violated the spoliation doctrine and sought relief by filing a motion in limine at the outset of the trial.

Following a review of the parties' written motions and argument, the trial court ruled:

[P]laintiff has been given the opportunity to do a number of things. No. 1, make arguments, and particularly in closing argument that the jury can draw whatever conclusions from what they have heard happen with this video. During the trial we would not allow on the part of the defendant to testify with what was in the video they saw is favorable to defendant's position . . ..

Regarding the proposed instructions, the trial court ruled:

I think this would be a very drastic remedy to give an instruction like this . . . I think it is just not supported by the evidence, and . . . the use of this instruction really takes liability out of the case whatsoever . . ..

As such, the trial court prohibited Respondent from presenting evidence as to what the videotape showed and granted Appellant permission to argue the adverse inference from the missing

videotape in closing argument. However, the trial court declined to grant Appellant's two additional alternate remedies for Respondent's failure to preserve the videotape evidence, including allowing her (1) to submit a non-MAI adverse inference instruction[4] to the jury; or (2) to prohibit Respondent from offering testimony about the disputed facts the video would have shown.

Appellant does not identify any Missouri case law demonstrating that, upon a finding of spoliation, a party is entitled to relief in the form of an adverse-inference jury instruction. As noted by the Missouri Supreme Court Committee on Jury Instructions ("the Committee"), many things cannot be stated in instructions, including inferences. Mo. Approved Jury Instr. (Civil), Why and How to Instruct a Jury (7th ed.), at LXXV. Specifically, the Committee provides the following:

> Every lawyer knows that . . . an adverse presumption arises against the spoiler of evidence, ad infinitum. Nevertheless, none of those presumptions or inferences or abstract statements of law has any place in a jury instruction.

*Id*. at LXXV-LXXVI. The prohibition against such an instruction is based upon the principle that the trial court should not comment on the evidence. *See Hartman v. Hartman*, 284 S.W. 488, 489 (Mo. banc 1926) ("Such an instruction would be a comment on the evidence; it is an

---

[4] Appellant presented three alternative adverse-inference instructions to the trial court:

A. Since the videotape evidence of the incident was in [Respondent]'s possession and control and is now no longer available, you may infer that the videotape evidence would have shown that the floor where [Appellant] fell was wet because it had been mopped and that there were no wet floor signs visible to [Appellant] at the time of her fall.

B. Since the videotape evidence of the incident was in [Respondent]'s possession and control and is now no longer available, you may infer that the videotape evidence would have been favorable to [Appellant] or unfavorable to [Respondent].

C. Since the videotape evidence of the incident was in [Respondent]'s possession and control and is now no longer available, any evidence that there were wet floor signs visible to [Appellant] at the time of her fall is hereby withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

inference of fact, not of law"). The spoliation doctrine only addresses evidence. Regardless of whether Respondent's failure to preserve the surveillance video triggered the spoliation doctrine or not, Appellant was not entitled to any jury instruction addressing that issue.

Appellant also argues on appeal that Respondent should have been prevented from presenting testimony from Respondent's employee Moore, who witnessed Appellant's fall, regarding what she saw. While the trial court prevented Respondent from offering testimony of witnesses who saw the videotape footage, he allowed Respondent to offer firsthand witness testimony of the fall. If the spoliation doctrine is triggered, "the spoliator is left to determine whether any remaining evidence exists to support his or her claim in the face of the inference." *Schneider*, 976 S.W.2d at 526. Thus, if Respondent's failure to preserve the surveillance tape amounted to spoliation, it would be barred from presenting testimony or other evidence as to what the tape showed, but it would not prevent Respondent from presenting other evidence relating to the same subject matter as the missing evidence, such as Moore's testimony.

While it is unclear whether the trial court found that Appellant met her burden of proving Respondent spoliated the missing videotape, it did address Appellant's request for relief by making various evidentiary rulings. However, Appellant's additional requested remedies exceeded the relief authorized by the spoliation doctrine, and the trial court did not abuse its discretion in denying these requests. Point one is denied.

**B.      Dr. Rende's testimony**

In her second and final point on appeal, Appellant claims the trial court erred in denying her motion for a new trial because the trial court allowed Respondent's medical expert to offer opinion testimony not included in his original Rule 60.01 report. We disagree.

9

The trial court is vested with discretion to permit or exclude testimony if an expert witness provides different testimony from that disclosed in discovery or changes the bases of his opinions. *Sherar v. Zipper*, 98 S.W.3d 628, 632-33 (Mo. App. W.D. 2003). We review a trial court's admission or exclusion of expert testimony for abuse of discretion. *Duerbusch v. Karas*, 267 S.W.3d 700, 707 (Mo. App. E.D. 2008). A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *McCollough*, 349 S.W.3d at 396-97. An appellant bears the burden of proving that the trial court abused its discretion and showing that she has suffered prejudice. *Duerbusch*, 267 S.W.3d at 707.

Rule 60.01 mandates a mutual exchange of medical information between the parties in order to eliminate medical uncertainty. *See State ex rel. Castillo v. Clark*, 881 S.W.2d 627, 630 (Mo. banc 1994). The opposing party is entitled to ask the court to compel a litigant to submit to a medical examination by a medical examiner of its choice. Rule 60.01(a). In exchange, a litigant compelled to this examination is entitled to a report by the examiner consisting of a detailed list of all opinions and the bases for those opinions, if she requests it. Rule 60.01(b).

Here, Respondent requested an independent medical examination of Appellant to be performed by Dr. Rende. In his Rule 60.01 report, Dr. Rende opined that Appellant's injuries to her meniscus did not result from her fall and listed the bases for this opinion. Dr. Rende's report further stated that access to additional films from Appellant's treating physician could further help him refine his opinion. Four days prior to trial, Dr. Rende received the films in question, and he testified in his deposition that they served to confirm his earlier diagnosis. Because the films were in the possession of Appellant's treating physician and the films do not cause any alteration of Dr. Rende's testimony or conclusions, Appellant suffered no surprise at trial from

10

any of Dr. Rende's recorded testimony. Under these circumstances, Appellant cannot demonstrate that she suffered any prejudice by the trial court's decision allowing Dr. Rende's testimony on the additional films. Therefore, the trial court did not abuse its discretion. Point two is denied.

### III. CONCLUSION

The trial court's denial of Appellant's motion for a new trial is affirmed.

ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

11